IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-89-FL
No. 5:25-CV-308-FL

MARKIE DEVON JONES,                          )
                                             )
                    Petitioner,              )
                                             )
        v.                                   )          **ORDER and**
                                             )      **MEMORANDUM AND**
                                             )       **RECOMMENDATION**
UNITED STATES OF AMERICA,                    )
                                             )
                    Respondent.              )

This matter is before the court on the motion by petitioner Markie Devon Jones ("petitioner" or "Jones") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [DE-80] ("instant § 2255 motion"). The matter is also before the court on respondent's motion to dismiss [DE-89] filed with a supporting memorandum [DE-90]. Also before the court is petitioner's motion to strike [DE-92] respondent's motion to dismiss, to which respondent filed a response in opposition [DE-93]. In the response, respondent seeks, in the alternative, leave to refile its motion to dismiss and supporting memorandum out of time, which the court construes as the government's third motion for extension of time. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation, and an order, respectively, pursuant to 28 U.S.C. § 636(b)(1).

For the reasons stated below, petitioner's motion to strike [DE-92] is DENIED and the government's third motion for extension of time [DE-93] is DENIED. Also for the reasons stated below, the undersigned RECOMMENDS that respondent's motion to dismiss [DE-89] be DENIED as untimely, but that the court *sua sponte* DENY petitioner's instant § 2255 motion [DE-80].

## GENERAL BACKGROUND

On August 12, 2015, petitioner pleaded guilty, without a plea agreement, to the sole count in the indictment against him, that is "having been previously convicted of a crime punishable by a term of imprisonment exceeding one (1) year, [petitioner] did knowingly possess in and affecting commerce, a firearm and ammunition, in violation of Title 18, United States Code, Sections 922 (g)(1) and 924." [DE-1] at 1; [DE-29]; [DE-80] at 1.

Prior to sentencing, the United States Probation Office filed a presentence investigation report ("PSR") determining petitioner's advisory sentencing guideline range to be 135 to 168 months' imprisonment, based upon on a total offense level of 30 and a criminal history category of IV. PSR [DE-30] ¶ 64. Yet petitioner was determined to be an armed career criminal as defined in 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), and therefore subject to the statutory mandatory minimum sentence of 15 years' imprisonment. PSR [DE-30] ¶ 60. Because the statutory mandatory minimum sentence of 15 years imprisonment was greater than the maximum of the applicable guideline range, petitioner's guideline term of imprisonment was determined to be 180 months. *Id.* (citing USSG §5G1.1(b)).

The PSR provided that petitioner qualified as an armed career criminal because "[t]he offense of conviction is a violation of 18 U.S.C. § 922(g), and [petitioner] has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions." PSR [DE-30] ¶60. While the PSR does not specify which prior convictions were considered to be the predicate offenses for the ACCA designation, *see generally* PSR [DE-30], at the sentencing on November 24, 2015, petitioner's counsel conceded that petitioner had "three breaking and entering offenses that alone qualify him to be an armed career criminal."

Sentencing Transcript [DE-44] at 3. The breaking and entering convictions occurred when petitioner was sixteen years of age (the "juvenile breaking and entering convictions"). *See* PSR [DE-30] ¶¶ 11-20.

On November 24, 2015, the court sentenced petitioner to 180 months' imprisonment, and 3 years' supervised release. Judgment [DE-35] at 2-3. Petitioner appealed his judgment of conviction [DE-37], and the United States Court of Appeals for the Fourth Circuit affirmed the judgment on October 3, 2016 [DE-51, -52].

On May 7, 2019, petitioner, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "prior § 2255 motion") [DE-57]. Respondent filed a motion to dismiss the petition [DE-64], and on September 23, 2019, the court denied petitioner's motion to vacate and granted the motion to dismiss [DE-69].

On June 25, 2020, North Carolina passed legislation with an effective date of December 1, 2019, which allowed individuals to petition courts to expunge convictions for certain offenses that occurred before the offender was eighteen years old ("Raise the Age law"). N.C.G.S. § 15A-145.8A, N.C.S.B. 562, N.C. Sess. Laws 2020-35 (amended July 26, 2025). Petitioner filed his expunction petition on June 6, 2024.[1] [DE-80-1]. On May 1, 2025, the Johnston County Superior Court issued an expunction order with respect to, *inter alia*, plaintiff's juvenile breaking and entering convictions. *See* [DE-80-1] at 2.

On June 6, 2025, petitioner, represented by counsel, filed the instant § 2255 motion. [DE-80]. Petitioner argues that he no longer qualifies as an armed career criminal, and his sentence is therefore unlawful. *See* [DE-80] at 1.

---

[1] The undersigned notes that various sources and parties refer to "expunction" and "expungement" to refer to the same concept. *Compare, e.g.*, [DE-80-1] at 2 *with* 18 U.S.C. § 921(a)(20).

3

On July 18, 2025, the government filed a motion seeking a thirty-day extension of time to file a response [DE-84], which the court granted, extending the government's response deadline until August 21, 2025 [DE-85]. On August 20, 2025, the government filed a second motion for extension of time to file a response, seeking a twenty-one-day extension. [DE-86]. The court granted the motion, extending the government's response deadline until September 11, 2025. [DE-88].

On September 22, 2025, the government filed a motion to dismiss [DE-89] ("motion to dismiss") petitioner's instant § 2255 motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and filed a memorandum in support thereof [DE-90]. The government argues that petitioner's § 2255 claim should be dismissed because petitioner (1) failed to exercise due diligence in moving to expunge the prior state convictions and thus his motion is untimely; and (2) in the alternate, even if timely filed, petitioner failed to state a claim "because the expungement of his prior state convictions was not based on a violation of his right to counsel." *See* [DE-90] at 1.

On September 24, 2025, petitioner filed the instant motion to strike [DE-92] the government's late filing, arguing that the government's motion to dismiss should be stricken and denied with prejudice as it was filed untimely (*id.* at 1). The government filed a response in opposition [DE-93] to the motion to strike, conceding that its motion to dismiss was filed untimely, but moving for leave to refile its motion to dismiss and supporting memorandum "out of time based on excusable neglect" (*id.* at 1).

### <u>ORDER ON MOTION TO STRIKE [DE-92]</u>

Petitioner argues that the government's motion to dismiss should be stricken and denied

4

with prejudice because it was filed eleven days "after the expiration of a deadline they had requested in their second Motion to Continue and without filing A Motion For Leave To File Late with this Court or asking [p]etitioner if he had any objections to a late filing." [DE-92] at 1.

The government counters that a motion to strike is only appropriate in the context of a pleading under Rule 12(f) of the Federal Rules of Civil Procedure, and that "[a]lternatively, the [c]ourt should grant the [g]overnment leave to refile the motion to dismiss and supporting memorandum out of time . . . because the nine-day untimely filing of the [g]overnment's motion to dismiss and supporting memorandum is minor and not the result of a willful disobedience of the [c]ourt's order." [DE-93] at 3.

Federal Rule of Civil Procedure 12 provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" by acting on its own or on a motion made by a party. Fed. R. Civ. P. 12(f). Under Rule 7, pleadings include: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

The government is correct that a motion to strike is not the proper filing to oppose a motion to dismiss. *See United States ex rel. Jefferson v. Roche Holding AG*, 489 F.Supp.3d 418, 426 (D. Md. 2020) ("A motion to dismiss is not a pleading . . . Rule 12(f) does not permit the Court to strike [the defendant's] Motion to Dismiss or the exhibits attached thereto.") (first citing *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993)), (then citing *McCormick v. Hous. Auth. of Balt. City*, No. SAG-19-2415, 2020 WL 4003169, at *1 (D.Md. July 15, 2020)); *see also Riviera v. City of Chesapeake*, No. 4:22-cv-027, 2023 WL 3571930, at *5 (E.D. Va. May 19, 2023) ("Rule

7(a) does not include motions, briefs, and accompanying affidavits.") (citing *Int'l Longshoremen's Ass'n, S.S. Clerks Loc. 1624 v. Virginia Int'l Terminals*, 904 F.Supp.500, 504 (E.D. Va. 1995)). Accordingly, petitioner's motion to strike [DE-92] is DENIED as procedurally improper.

### ORDER ON GOVERNMENT'S THIRD MOTION FOR EXTENSION OF TIME [DE-93]

Next, the court must determine whether to consider the merits of the government's motion to dismiss, which the government concedes was untimely filed. *See* [DE-93] at 3. The court construes the government's motion for "leave to refile the motion to dismiss and supporting memorandum out of time" ([DE-93] at 3]) as a motion for extension of time under Federal Rule of Civil Procedure 6(b)(1)(B). Rule 6(b)(1)(B) provides that "[w]hen an act . . . must be done within a specified time, the court may . . . extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). When assessing the presence or absence of excusable neglect, the court must consider: "(1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith," with the third factor being the most important. *Colony Apartments v. Abacus Project Mgmt.*, 197 F. App'x 217, 223 (4th Cir. 2006) (citing *Thompson*, 76 F.3d at 533-34). Establishing these four elements does not equate to a finding of excusable neglect; "rather, 'whether to grant an enlargement of time still remains committed to the discretion of the district court.'" *Id.* (citing *Thompson*, 76 F.3d at 532 n. 2).

Here, the equities weigh against granting the government's third motion for extension of time. Petitioner did not respond to the merits of the government's motion to dismiss. *See* [DE-

92]. Accordingly, petitioner would be prejudiced if the court were to find the government's motion to dismiss timely filed. Allowing the government's third motion for extension of time would further delay proceedings beyond the two extensions the government has already sought, as petitioner would require an opportunity to respond on the merits of the government's motion to dismiss. While the court finds no evidence of bad faith on the government's part and other courts have found that "administrative oversight" is barely excusable, *see Former Emps. of Tyco Elecs., Fiber Optics Div. v. U.S. Dep't of Lab.*, 27 C.I.T. 380, 384 (2003), the Fourth Circuit has explained that "neglect is precisely the sort of 'run-of-the-mill inattentiveness by counsel' that we have consistently declined to excuse in the past." *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011) (citing *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 535 (4th Cir. 1996)); *cf. also Schweikert v. Baxter Healthcare Corp.*, No. CIV.A. 12-5876 FLW, 2015 WL 4578443, at \*20 (D.N.J. July 29, 2015) ("Plaintiff's reason for delay -. . . 'administrative oversight'-[is] within the reasonable control of Plaintiff, militating against finding excusable neglect here.").

Here, the government's neglect is accentuated by the fact that the government missed a deadline that it requested in its second motion for extension of time. *See* [DE-86] at 1 (requesting deadline extension through September 11, 2025, to respond to petitioner's motion). Notably, this is not a case where a blameless private party is prejudiced by the conduct of the party's lawyer. *Contra Brannon v. Joe Gibson's Autoworld*, No. CIV.A. 7:07-2990-HFF, 2008 WL 3992326, at \*2 (D.S.C. Aug. 27, 2008) ("Plaintiff's counsel failed to file a response because of an administrative oversight. Plaintiff is blameless for this error.").

Accordingly, the government's third motion for extension of time is DENIED.

<u>**MEMORANDUM AND RECOMMENDATION ON GOVERNMENT'S MOTION TO DISMISS [DE-89]**</u>

As the government failed to demonstrate excusable neglect for missing the relevant filing deadline for the reasons discussed above, the undersigned RECOMMENDS that the government's motion to dismiss [DE-84] be DENIED as untimely.

<u>**MEMORANDUM AND RECOMMENDATION ON INSTANT § 2255 MOTION [DE-80]**</u>

Notwithstanding the above denial of the government's motion to dismiss, the court may *sua sponte* dismiss a motion under 28 U.S.C. § 2255(b) that lacks merit.  *See* 28 U.S.C. § 2255(b) (dispensing with the need to require the government's participation where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970) ("Where the files and records conclusively show that the prisoner is entitled to no relief, summary dismissal is appropriate[, and i]f the petition be frivolous or patently absurd on its face, entry of dismissal may be made on the court's own motion without even the necessity of requiring a responsive pleading from the government."); *Foster v. United States*, No. 2:04-CR-80, 2010 WL 11601015, at *2 (N.D. Ind. Mar. 23, 2010) ("With or without a response for the Government, this Court has an obligation to carefully consider the merits of the arguments raised by the Petitioner.").

Moreover, here petitioner appears to expressly request that the merits of his case be considered solely on the basis of his filings.  *See* [DE-92] ("[Petitioner] respectfully requests that any decision reached by this Honorable Court be based solely on the properly filed materials it has before it.").

### I.  STANDARD OF REVIEW FOR INSTANT § 2255 MOTION

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was

8

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the § 2255 petition but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The petition states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the petition, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [petitioner]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009)) (citing *Iqbal*, 556 U.S. at 678-83). Analogous to consideration of a motion to dismiss, when considering a § 2255 petition, it is appropriate for the court to consider the "files

9

and records of the case" without converting the motion into one for summary judgment. 28 U.S.C. § 2255(b); *cf. also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that a court may "properly take judicial notice of matters of public record" when deciding Rule 12(b)(6) motions).

## II. ANALYSIS

Petitioner seeks "an order vacating and correcting his sentence under 28 U.S.C. § 2255 because he no longer qualifies as an armed career criminal, and his sentence is therefore unlawful." [DE-80] at 1.

Petitioner argues that (1) "[t]his motion is not a second or successive § 2255 motion because [petitioner's] convictions were not eligible for expunction at the time of his sentencing or his [prior] § 2255 [motion]"; (2) "[t]his motion falls within the one-year tolling period because [petitioner's] expunctions were not certified as until [sic] May 2025" and (3) "[petitioner] no longer qualifies as an armed career criminal, and his sentence should be reduced to time served." [DE-80] at 3-6.

### A.      Status of instant § 2255 motion

The undersigned agrees that petitioner's instant § 2255 motion is not "[a] second or successive motion" under 28 U.SC. § 2255(h). The Fourth Circuit has explained that a § 2255 motion does not constitute "a 'second or successive' motion for purposes of 28 U.S.C. § 2255(h), where the basis for [petitioner's] claim did not arise until after the district court denied his first § 2255 motion." *United States v. Hairston*, 754 F.3d 258, 259 (4th Cir. 2014).

Here, the change in law giving rise to petitioner's instant § 2255 motion, *i.e.*, the Raise the Age law, was not passed until 2020. Accordingly, petitioner's instant cause of action based on

10

this change had not yet arisen when he filed his prior § 2255 motion on May 7, 2019. [DE-57].

**B.       Timing and due diligence of instant § 2255 motion[2]**

A petitioner has one year to file a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).

Petitioner argues that as he could not have petitioned to "vacate" his sentence until 2020 and "diligently pursued expunction when he was able to acquire representation through the North Carolina Pro Bono Resource Center . . . [in 2024]," he "acted with due diligence in state court and is filing this motion well within one year of receiving notice of the expunctions" in accordance with the requirements of § 2255(f)(4). [DE-80] at 5.

The undersigned acknowledges that (1) petitioner could not have filed the instant § 2255 motion prior to 2020, as the Raise the Age law did not pass until June 25, 2020; and (2) petitioner filed his motion within one year of the expunction of the convictions for the predicate offenses,

---

[2] While the grounds for denial of petitioner's § 2255 motion [DE-80] may overlap or be similar to some of the reasons cited by the government in its motion to dismiss [DE-89, -90], any such similarities likely arise from the inherent deficiencies in petitioner's instant § 2255 motion and should not be construed as the undersigned crediting or considering the arguments raised by the government in its untimely motion to dismiss [DE-89, -90].

which provided the basis for the ACCA qualification, *i.e.*, the expunction of his juvenile breaking and entering convictions.

Yet the dispositive issue is whether petitioner exhibited due diligence when the possibility to pursue an expunction of his convictions arose on June 25, 2020, when North Carolina passed the Raise the Age law. N.C.G.S. § 15A-145.8A, N.C.S.B. 562, N.C. Sess. Laws 2020-35 (amended July 26, 2025). Petitioner provides that he "diligently pursued expunction when he was able to acquire representation through the North Carolina Pro Bono Resource Center[, and] the [expunction] petition was filed in June 2024." [DE-80] at 4-5; *see* [DE-80-1] at 1 (copy of the expunction petition showing a filing date of June 6, 2024).

The Supreme Court in *Johnson v. United States* considered the question of "due diligence" in the context of § 2255(f)(4). 544 U.S. 295, 310 (2005). Specifically, the Supreme Court found that the duty to engage in due diligence in seeking the facts supporting a § 2255 claim was triggered when "the subject of the § 2255 claim has come into being [and] the significance of inaction is clear," which in that case occurred on the date of the petitioner's federal judgment. *Id..* at 309. The Supreme Court went on to find that the petitioner in that case had not acted with due diligence when he contested the validity of various state court convictions more than three years after entry of judgment in his federal case. *Id.* at 311. The Supreme Court further found that even if the Court "moved the burden of diligence ahead to the date of finality of the federal conviction or to [the Antiterrorism and Effective Death Penalty Act of 1996's] effective date two days later, Johnson would still have delayed unreasonably, having waited over 21 months." *Id.*

Here, petitioner waited almost four years to seek expunction of his juvenile breaking and entering convictions after the legal ability to do so "[came] into being [and] the significance of

12

inaction [was] clear." *Id.* at 309; [DE-80] at 4-5.

Petitioner appears to argue that his duty to engage in due diligence was only triggered once "he was able to acquire representation through the North Carolina Pro Bono Resource Center." [DE-80] at 5. Yet the Supreme Court rejected this line of reasoning in *Johnson*, specifically noting that the Court has "never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness." 544 U.S. at 311, 125 S. Ct. at 1582.

Because here, similar to the case in *Johnson*, "there is every reason to believe that prompt action would have produced [an expunction] well over a year before [petitioner] filed his § 2255 petition, the fourth paragraph of § 2255 is unavailable, and [petitioner] does not suggest that his motion was timely under any other provision." *See id.*

Accordingly, the undersigned RECOMMENDS that petitioner's instant § 2255 motion be DENIED as untimely.

**C.      Expunction**

Even if petitioner's instant § 2255 motion had been timely filed, petitioner would have been required to overcome the burden of showing that the expunction entitled him to relief under § 2255. *United States v. Pettiford*, 612 F.3d 270, 278 (4th Cir. 2010) ("Vacatur alone does not entitle a petitioner to habeas relief."). Even in the case of a vacatur, "the petitioner must still meet his burden of showing that his sentence is unlawful on one of the specified grounds, because only after determining that a sentence is unlawful can the district court vacate and set aside the sentence." *Id.*

When this court previously considered expunction pursuant to N.C. Gen. Stat. § 15A-

13

145.8A, it did so in the context of Sentencing Guideline ramifications. *See United States v. Shealey*, No. 5:08-CR-282-FL-2, 2024 WL 3844863, at *3 (E.D.N.C. Aug. 16, 2024) (quoting *United States v. Mobley*, in support of the principle that "[c]onvictions reversed or vacated for reasons related to constitutional invalidity, innocence, or errors of law are expunged for *purposes of the Guidelines*") (alteration in original) (emphasis added) (quoting 96 F. App'x 127, 129 (4th Cir. 2004)).[3]  The Sentencing Guidelines require that "[c]onvictions reversed or vacated for reasons related to constitutional invalidity, innocence, or errors of law are expunged for purposes of the Guidelines and therefore cannot be included in criminal history calculations." *Mobley*, 96 F. App'x at 129 (quoting *United States v. Cox*, 83 F.3d 336, 339 (10th Cir.1996)); *see also* U.S. Sent'g Guidelines Manual §4A1.2, Note 10 (U.S. Sent'g Comm'n 2021) ("A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction[, and s]entences resulting from such convictions are to be counted.").

Here, petitioner argues that his expunction impacted his statutory minimum sentence rather than his guideline range. *See* [DE-80] at 1.  There is no evidence that Congress intended courts to look to the Sentencing Guidelines when interpreting "expunction" within the context of the ACCA. *Cf. United States v. Sellers*, 784 F.3d 876, 885 (2d Cir. 2015) (distinguishing the standard for convictions that are "set aside" under the Sentencing Guidelines and the ACCA, respectively).

For purposes of the ACCA,

---

[3] "To the extent petitioner is seeking compassionate release, he must file a separate motion seeking such relief." *See Shealey*, No. 5:08-CR-282-FL-2, 2024 WL 3844863, at *4.  "The court expresses no opinion herein as to whether petitioner is eligible for compassionate release or whether the § 3553(a) factors support a sentence reduction under this statute." *See id.*

14

a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).[4]

When interpreting this section, the Fourth Circuit explained that:

[i]n determining whether a "restoration of civil rights expressly provides that the person may not . . . possess . . . firearms," we look to the law of the jurisdiction of conviction, . . . (here, the State of North Carolina), and consider the jurisdiction's entire body of law, not merely, for example, the jurisdiction's certificate of restoration of rights, received upon discharge of a conviction.

*United States v. O'Neal*, 180 F.3d 115, 119 (4th Cir. 1999) (first and second omission in original)

(citing *United States v. McLean*, 904 F.2d 216, 218 (4th Cir.1990)).

When considering applicable state law, the court must consider "the law in effect on the date of discharge." *Id.* at 121. Petitioner's expunction order was issued on May 1, 2025. *See* [DE-80-1] at 2. At that time, N.C. Gen. Stat. § 14-415.1(a) (the "North Carolina Felony Firearms Act") provided that "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm." N.C. Gen. Stat. § 14-415.1(a) (2011) (amended July 9, 2025). The statute expressly exempts from this restriction "a person who, pursuant to the law of the jurisdiction in which the conviction occurred, has been pardoned or has had his or her firearms rights restored if such restoration of rights could also be granted under North Carolina law." *Id.* § 14-415.1(d).

---

[4] "[B]y the interrelation of these three statutory provisions, sections 921(a)(20), 922(g)(1), and 924(e), a previous conviction may not serve as a predicate for application of section 924(e) if the jurisdiction of conviction has restored to the defendant the civil rights, including the right to possess firearms, that it stripped from him upon his conviction." *United States v. O'Neal*, 180 F.3d 115, 119 (4th Cir. 1999).

The Fourth Circuit found that the North Carolina Felony Firearms Act creates an express firearms restriction for relevant discharged convictions that satisfies the requirements of the last clause of 18 U.S.C. § 921(a)(20). *McLean*, 904 F.2d at 219 (holding the North Carolina Felony Firearms Act "'expressly provides' the circumstances under which a 'person may not ship, transport, possess or receive firearms,' as required by 18 U.S.C. § 921(a)(20)"); *see also United States v. O'Neal*, 180 F.3d 115, 120 (4th Cir. 1999) (finding that the version of the North Carolina Felony Firearms Act in effect when a defendant's convictions were discharged limited the restoration of defendant's firearms rights, and as such, these discharged convictions were not excluded from consideration under the ACCA pursuant to 18 U.S.C. § 921(a)(20)). Accordingly, unless the expunction order or another applicable North Carolina law provides otherwise, any expunction in North Carolina inherently includes a restriction on the possession of firearms and thereby requires that any such expunged conviction still be considered under the ACCA pursuant to 18 U.S.C. § 921(a)(20).

Under North Carolina law, pardons, expunctions, and restoration of firearm rights are distinct legal concepts that are governed by distinct statutes. *See* N.C. Gen. Stat. §§ 147-21 (governing the form and contents of applications for pardon); 15A-145 *et seq.*, 15A-149, 15A-153 (governing expunctions); 14-415.4 (governing restoration of firearms rights). While the North Carolina Felony Firearms Act expressly excludes individuals whose convictions have been pardoned or whose firearm rights have been restored from its purview, it provides no corresponding exclusion of expunged convictions. *See* N.C. Gen. Stat. § 14-415.1(d). North Carolina courts and the Fourth Circuit have found that "when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *In re Investigation of the*

16

*Death of Miller*, 357 N.C. 316, 325, 584 S.E.2d 772, 780 (2003) (quoting *Evans v. Diaz*, 333 N.C. 774, 779-80, 430 S.E.2d 244, 247 (1993)); *Ayes v. United States VA*, 473 F.3d 104, 110-11 (4th Cir. 2006) (recognizing the "time-honored maxim" that "the expression of one thing implies the exclusion of another."). The undersigned must, therefore, conclude that the North Carolina law does not exempt felons whose convictions have been expunged from the prohibition of possessing firearms pursuant to the North Carolina Felony Firearms Act. Neither does N.C. Gen. Stat. §§ 15A-145.8A or 15A-153 provide for restoration of firearm rights or otherwise exempt an individual whose conviction has been expunged from the purview of the North Carolina Felony Firearms Act. *See* N.C. Gen. Stat. § 14-415.1.

Because the North Carolina Felony Firearms Act effectively added a restriction to petitioner's expunction under N.C. Gen. Stat. § 15A-145.8A, prohibiting him from possessing a firearm, his expunged convictions must still be counted for purposes of the ACCA (*see* 18 U.S.C. § 921(a)(20)), and he is not entitled to relief under his habeas petition.

## **<u>CONCLUSION</u>**

For the reasons stated above, petitioner's motion to strike [DE-92] is DENIED and the government's third motion for extension of time [DE-93] is DENIED. Also for the reasons stated above, IT IS RECOMMENDED that respondent's motion to dismiss [DE-89] be DENIED as untimely, but that the court *sua sponte* DENY petitioner's instant § 2255 motion [DE-80].

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 24, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a *de novo* determination) of those portions of the

17

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within 14 days of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** ***See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 10th day of July, 2026.

Brian S. Meyers
United States Magistrate Judge

18